## APPEAL OF DESLOGE CONSOLIDATED LEAD CO.

Docket No. 5162.   Submitted December 10, 1925.   Decided June 21, 1926.

1. Upon the evidence, *held*, that the taxpayer did not, in the year involved, ascertain a debt to be worthless.

2. Where the recollection of a witness as to the date upon which a certain transaction took place several years past conflicts with accounting records made at the time of the transaction, and no basis is shown for believing the recollection of the witness to be more accurate than the written record, the latter is entitled to the greater weight.

*George H. Moore, Esq.*, for the petitioner.

*George G. Witter, Esq.*, for the Commissioner.

Before GRAUPNER,[1] TRAMMELL, and PHILLIPS.

Taxpayer appeals from the determination of a deficiency of $162,634.31, income and profits taxes for the calendar year 1918. The petition alleges that the Commissioner erroneously refused a deduction of $236,573.83 as the amount of a debt ascertained to be worthless during the taxable year.

### FINDINGS OF FACT.

The taxpayer is a Missouri corporation with its principal office in the City of St. Louis.   During the taxable year it was engaged in mining, principally of lead ores, in the State of Missouri, and also in smelting the ores mined, reducing them to commercial or pig lead.   The taxpayer sold part of its lead products to a corporation in St. Louis known as the Lead Products Co.   The sales began on June 4, 1909, and increased in volume from year to year until about December, 1918.   All sales were made on open account.

The balance due the taxpayer on December 31, 1917, was $233,447.46, and on December 31, 1918, it was $257,873.27.

Against this amount standing unpaid upon its books, the taxpayer held drafts drawn by the Lead Products Co. upon its customers, accepted by them and endorsed to the taxpayer, amounting to $21,299.48.   On December 31, 1918, the taxpayer charged off on its books $136,573.83 of the amount due on this account, at the same time charging the account with interest of $4,042.83.   This left a balance upon the account of $121,299.44 of which $21,299.44 represented the unpaid drafts referred to above.

A large block of the stock of the Lead Products Co. was owned by the same persons who owned the stock of the taxpayer.   In March, 1919, a purchaser was found for this stock who offered $60,000 for it, one of the conditions of the purchase being that the liability of the Lead Products Co. to the taxpayer should be discharged.

---

[1] This decision was prepared during Mr. Graupner's term of office.

The sale was made on this basis and $47,500 of the amount so received was paid over to the taxpayer and $12,500 was distributed among those who transferred their stock interests in the Lead Products Co.

The debt of the Lead Products Co. to the taxpayer was not ascertained to be worthless and charged off within the taxable year 1918.

## OPINION.

PHILLIPS: The sole question involved in the appeal is whether a certain debt was ascertained to be worthless and charged off within the taxable year 1918. It is conceded that only a part was charged off and claimed by the taxpayer as a deduction on its return. The taxpayer now claims, however, that the entire amount was ascertained to be worthless during 1918 and should be allowed as a deduction. After a careful examination of the evidence, we are convinced that there was no ascertainment of worthlessness during 1918.

The oral testimony is to the effect that in the fall of 1918 one of the officers of the taxpayer became doubtful as to the correctness of the financial statements furnished the taxpayer by the Lead Products Co., whereupon an inspection of their plant was made and a report made to the officers of the taxpayer that the assets of the debtor then on hand were not of the value stated. There is the further testimony that on or about December 1, 1918, a financial statement was furnished the taxpayer by the debtor and that, upon receiving that statement, the president of the taxpayer prepared a demand for the payment of $136,573.83 and prepared a statement as follows:

Mr. W. H. ROWLEY,
    Secretary & Treas. Lead Products Co.
DEAR SIR:

| | | |
|---|---:|---:|
| Our account against the Lead Products Co | | $257,873.27 |
| when drafts we hold are paid | | 21,299.44 |
| will leave a balance still due | | 236,573.83 |
| We have made demand for payment on account of | | 136,573.83 |
| Still showing an indebtedness to the Desloge Consolidated Lead Company of | | 100,000.00 |
| We have made the demand for the above payment based on your inventory of December 1, 1918, representing convertible assets of | | 126,203.64 |
| Open Ledger Accounts | | 40,122.94 |
| Liberty Bank | $3,645.60 | |
| Petty cash | 77.44 | |
| City of St. Louis | 29.68 | |
| | | 3,752.72 |
| | | $170,079.30 |
| Trial balance shows investment in Machinery, Buildings, Laboratory Fixtures, Insurance, Licenses | | 175,130.66 |
| Total Assets | | $345,209.96 |
| Against which we have asked a payment of | | 136,573.83 |
| If paid should leave approximately invested | | $208,636.13 |

The oral testimony is to the further effect that this statement was furnished the treasurer of the Lead Products Co. on or about December 16, 1918, at a conference between the president of the taxpayer and the treasurer of the debtor; that at such conference the treasurer of the debtor stated that the buildings of the debtor were on leased ground, and that if their lease rentals were not paid the buildings would be forfeited; that the machinery in said buildings was special and could not be used for any other purpose to advantage, and if not continued in their present use would be worth no more than their junk value, which would be a nominal sum; that their equipment consisted of kilns and furnaces built up from the ground and could not be removed, so that they were useless unless the business was continued at its then location; that the accounts receivable listed at $40,122.94 were largely worthless; that the inventory of lead products was fictitious, and that if a sale was forced its assets would be worthless.

There was also introduced in evidence a copy of the account as it appeared on the books of the taxpayer. This account indicates that on December 16 the unpaid balance due to the taxpayer was not $257,873.27, but was $258,808.92 and that the drafts held by the taxpayer on December 16 amounted to $26,577.92 and not $21,299.44, as stated in the statement. It was not until after interest of $4,042.83 was charged to the account as of December 31 and a draft of $5,278.48 was collected on December 30, 1918, that the balance of the account became $257,873.27, the amount set forth in the statement alleged to have been prepared on December 16.

It seems to us clear that the statement could not have been prepared until December 30, 1918, at the earliest, and that the interview between the president of the taxpayer and the treasurer of the debtor could not have taken place prior to that date. In other respects the oral testimony is indefinite and, after the lapse of such a long period of time, we feel that the written record is more reliable than the present recollection of the witnesses.

There is the additional factor to be considered that the debtor on December 30, 1918, was the owner of considerable assets, the value of which we do not know. In the early part of 1919 the capital stock of the debtor, held by the individuals who also owned the capital stock of the taxpayer, was disposed of for $60,000, one of the considerations of the sale being that the debt should be wiped out. What portion of the entire stock of the debtor was held by these stockholders and was the subject of the sale we do not know. It does appear, however, that in December, 1918, an effort was being made to consummate such a sale as took place in 1919 and that the officers of the taxpayer had some hope that a substantial amount could be realized.

The Board has already held that a deduction can not be taken under the Revenue Act of 1918 for a debt ascertained to be worthless only in part. *Appeals of Steele Cotton Mill Co.*, 1 B. T. A. 299; *The Murchison National Bank*, 1 B. T. A. 617. We believe this to be the situation in which the taxpayer found itself at the close of 1918.

*The deficiency is $162,634.31. Order will be entered accordingly.*

ARUNDELL and MILLIKEN not participating.